**Jerry REED and T.S.C. Productions, Inc., Plaintiffs,**

v.

**AMOCO OIL COMPANY, Defendant.**

**No. 3–84–0576.**

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 3, 1984.

Mark J. Patterson, Don L. Smith, Nashville, Tenn., for plaintiffs.

Robert J. Walker, R. Dale Grimes, Nashville, Tenn., Robert M. Newbury, Chicago, Ill., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

### I. *Introduction*

Before this Court is a motion by plaintiffs, Jerry Reed and Thompson Station Congregation, Inc. [Jerry Reed], for a preliminary injunction to stop defendant Amoco Oil Company from using the advertising slogan "We go that extra mile" in its nationwide advertising campaign. Plaintiffs allege that defendant's use of this slogan infringes upon their own use of the phrase "Goin' the extra mile" in conjunction with an advertisement campaign that plaintiffs developed and have licensed to various independent tire dealers and distributors for use in promoting tires and automotive services. Plaintiffs maintain that the alleged infringement violates federal statutory trademark law, (15 U.S.C. § 1051 *et seq.*), the common law of trademark, and Tennessee statutory law concerning dilution of a trademark (T.C.A. § 47-25-433). The Court denies plaintiffs' motion for preliminary injunction because it finds that plaintiffs have failed to demonstrate a likelihood of success on the merits as to any of the three claims against defendant.

### II. *Facts*

Plaintiffs own the rights to and license an advertising campaign package developed sometime in 1982 that features the voice and image of Jerry Reed and uses as its theme the phrase "Goin' the extra mile." Plaintiffs, however, have not registered the phrase with the Federal Patent and Trademark Office. The advertising campaign package was offered to independent tire dealers across the country, with some twenty-one tire retailers and distributors in fourteen states licensing the package. The phrase "Goin' the extra mile" functions both as a tag line for the entire advertisement package in offering the campaign to tire dealers and as a slogan for the tire dealer/licensee to use in selling his products to the general public.

Apparently, in November of 1983, defendant Amoco Oil Company began a nationwide advertising campaign that used the phrase "We go that extra mile" in conjunction with its well-known trademark/logo "AMOCO." Defendant's expenses in advertising its products using "We go that extra mile" as a tag line have been in excess of fourteen million dollars. The advertising campaign used by Amoco was to promote the sale of gasoline, motor oil, and automobile maintenance services as well as to promote the general image of Amoco as being an oil company that would make that extra effort to satisfy its customers.

Because of the appearance of the Amoco campaign, plaintiffs allege that they were and are unable to further market their "Goin' the extra mile" campaign. However, no fact before this Court indicates that Amoco had an evil motive in selecting the form of its advertisement campaign or that Amoco purposefully tried to frustrate the continued licensing of plaintiffs' campaign to independent tire dealerships. Furthermore, Amoco does not manufacture or sell tires nor does it require its dealers to carry a certain type of tire.

### III. *Federal Statutory Claim*

Plaintiffs move this Court to issue a preliminary injunction under 15 U.S.C. § 1125(a) against Amoco's further use of the phrase "We go that extra mile." This Court in a recent trademark case stated the factors to consider in deciding whether to issue a preliminary injunction under the federal statute. The factors are "(a) whether the plaintiff has shown a strong or substantial likelihood of success on the merits, (b) whether the plaintiff has shown irreparable injury, (c) whether the issuance of a preliminary injunction would cause substantial harm to others, and (d) whether the public interest would be served by issuing a preliminary injunction." *WLWC*

*Centers, Inc. v. Winners Corp.*, 563 F.Supp. 717, 726 (M.D.Tenn.1983).

a. *Likelihood of Success on the Merits*

▮ In examining plaintiffs' likelihood of success on the merits this Court must proceed from a general proposition—i.e., when dealing with an unfair competition/trademark infringement case, courts recognize that one's original use of a phrase should be protected if the phrase is distinctive. Nevertheless, courts are reluctant to allow one to obtain monopoly rights to the use of a common word or phrase. *Jewel Companies, Inc. v. Westhall Co.*, 413 F.Supp. 994, 1000 (N.D.Ohio 1976) (citing *Standard Paint Co. v. Trinidad Asphalt Mfg. Co.*, 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536 (1911); *see Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 265 (5th Cir.1980). In order to be protectable under trademark law the term or phrase must identify the source of the product or service to its consuming public and also distinguish that product from others. *See* 1 J. Gilson, *Trademark Protection and Practice* § 2:01 (1974). The more common a phrase is, the more it appears in everyday parlance, less is the likelihood that the phrase identifies the source of a certain product, and less is the likelihood that it deserves trademark protection absent a strong showing of a protectable interest by the party who first used the phrase and claims trademark infringement. *Compare Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293 (9th Cir. 1971) (prior use of phrase "Escape from the ordinary" not protectable); and *B & L Sales Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352 (2d Cir.1970) (prior use of phrase "come on strong" not protectable) *with Application of Marriott Corporation*, 517 F.2d 1364 (C.C.P.A.1975) (prior use of phrase "We smile more" is deemed protectable in light of subsequent use of same phrase by a rival hotel chain).

▮ At issue in the instant case is the use of some form of the phrase "to go the extra mile." In order for plaintiffs to show a likelihood of success on the merits they must illustrate that they have a protectable interest in the use of the phrase. Whether the phrase is protectable or not depends upon how the phrase is classified. Trademark law divides all terms/phrases into four categories: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *See Winners Corp.*, 563 F.Supp. at 719. If the term is generic, it identifies the product (e.g., Band-Aid and aspirin) rather than the producer and thus is not protectable as a trademark. If a term is descriptive of a good or service, it describes to the purchasing public some characteristic, quality function, component or other property of the product (e.g., "Finger lickin' good"). J. Gilson, *supra* § 2.03. As such the term does not identify the source of the product, and therefore in order for a descriptive phrase to be protectable, it must have a "secondary meaning" which associates the product and its source to the consumer (e.g., in the mind of the consumer "Finger lickin' good" equals Kentucky Fried Chicken). If a phrase is suggestive it calls upon the consumer to use his imagination to associate the phrase with the source of the product or service and as such is protectable under trademark law (e.g., term "Metalock" would describe literally a lock made of metal, but as used it suggests to the consumer's imagination a process offered by a particular source to make cold repairs on cracked metal. *Engineered Mechanical Services v. Applied Mechanical Technology*, 584 F.Supp. 1149 (M.D.La.1984)). Finally, if the term is fanciful or arbitrary, it is considered inherently distinctive and thus protectable under trademark law because the term forces the consumer in a non-contextual, arbitrary manner to link a certain product with its source (e.g., "Kodak" or defendant's own "Amoco"). *See Amoco Oil Company v. Amerco, Inc.*, 192 U.S.P.Q. 729 (CCPA 1976); *see also* 1 J. McCarthy, *Trademarks and Unfair Competition*, §§ 11:2–11:4 (1973). The Court finds that the phrase "Goin' the extra mile" is not generic. Aside from this finding, the Court encounters difficulty in further classifying what type of phrase "Goin' the extra mile" should be. Further, classification is difficult because of the dual use of

the phrase—first as a thematic tag line used by plaintiffs to represent the entire advertisement package to tire dealers and distributors, and second as a slogan for the tire dealers to use in trying to sell their tires to the general public. To further categorize the phrase within the arbitrary—suggestive—descriptive spectrum this Court must examine the associational ties that the *relevant consuming public* has developed with respect to each of the two uses of "Goin' the extra mile." On the one hand is the general consuming public which buys tires from the tire dealers that license the advertisement campaign from the plaintiffs. As to this consumer group the products sold are tires and the services associated with tire sales and maintenance. On the other hand is the group of independent tire dealers and distributors which may or may not license plaintiffs' advertising package. The product in this instance is an advertisement campaign.

 This Court finds that as to the general consuming public the phrase "Goin' the extra mile" functions as an advertisement or slogan. In order to be protected under trademark law, the phrase at a minimum must identify the source of the product advertised. J. Gilson, *supra* at § 2:10. The Court finds that the tire dealers/licensees have licensed plaintiffs' advertisement package to convey a message about their product, i.e., that their tires and service are better, and not to create in the minds of the public some associational link between "Goin' the extra mile" and their particular tire dealership. *See* J. Gilson, *supra* at 2:02 p. 2–7, § 2:10. The phrase does not arbitrarily point to the product's source nor does it suggest in the minds of the general public any specific source; rather, it *describes* the type of quality and service the general consumer could expect from the particular tire dealership/licensee. Being descriptive, the phrase must have developed a secondary meaning within the relevant market in order to be a protectable mark. *Winners Corp.*, 563 F.Supp. at 720. The Court holds that in relation to the general public, the plaintiffs are not likely to succeed in showing a secondary meaning

for the phrase "Goin' the extra mile." The Court also finds that Amoco's subsequent use of a similar phrase has not caused the likelihood that the general public would confuse the products of Amoco with those of Jerry Reed and/or his licensees. Thus, as to the general public plaintiffs' phrase is a weak mark not deserving of trademark protection.

 The second relevant market to examine is that consisting of tire dealers and distributors—the potential licensees of plaintiffs' advertisement campaign. Plaintiffs claim that this group identifies the phrase "Goin' the extra mile" with Jerry Reed and his advertising package. Plaintiffs therefore maintain that the phrase may be "arbitrary" but if not, then certainly is a suggestive phrase and thus deserves trademark protection. Defendant argues that the phrase is descriptive without a secondary meaning, yet fails to state what characteristic, quality, or function of the advertisement campaign that "Goin' the extra mile" describes. Although not willing to classify the phrase as arbitrary, the Court is inclined to agree with plaintiffs that since the advertisement package is presented to the tire dealers as the "Goin' the extra mile" campaign, the phrase probably suggests the source of the product to the tire dealers and/or has a secondary meaning among this group that associates the phrase with Jerry Reed. Unfortunately, a showing of suggestiveness or descriptiveness with secondary meaning is not enough. In addition, plaintiffs must show "that defendant's actions cause a likelihood of confusion among the relevant buyer class." J. McCarthy, *supra* § 15.1. Absent a showing of a likelihood of confusion of products created by subsequent use of a mark, the Court will not issue an injunction against defendant's use of the same or similar mark. *See Amstar Corp.*, 615 F.2d at 265 (issuance of injunction reversed upon finding that use of the word "Domino" by defendant pizza delivery service did not create confusion among consumers as to whether the pizzas were made by defendant or by the plaintiff which produced

sugar sold under the identical mark). Determining whether a likelihood of confusion exists is a question for the Court to decide in light of certain factors. *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 651 (6th Cir.1982); *see WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1086 (M.D.Tenn.1983). The Court has reviewed the likelihood of confusion under the instant facts in relation to (1) the strength of the mark, finding "Goin' the extra mile" to be weak, (2) the relatedness of the goods, finding plaintiffs' advertisement campaign adequately dissimilar from Amoco's gas and automotive services, (3) the similarity of the mark, finding the marks adequately dissimilar in their respective appearances and uses, (4) any proof of actual confusion, finding no confusion as to the source of the products, (5) the marketing channels used, finding that both plaintiffs and defendant employed similar marketing channels such as radio, television, and point of sale materials like posters, banners, etc., (6) the likely degree of purchaser care, finding the independent tire dealer to be one who should exercise much care in knowing the source of the advertisement campaign he plans to license, (7) the intent behind Amoco's subsequent use of "We go that extra mile," finding no evil intent and finally (8) the likelihood of defendant expanding the product line, finding Amoco very unlikely to start producing advertisement packages to license to independent tire dealers. *See Winners Corp.*, 563 F.Supp. at 721–26 (discussed the eight factors to be examined in determining the likelihood of product confusion) (citing *Frisch's Restaurants, Inc.*, 670 F.2d at 648). Thus, while plaintiff may be able to illustrate that the "Goin' the extra mile" campaign is suggestive or has obtained a secondary meaning among independent tire dealers that identifies the campaign with Jerry Reed, this Court holds that plaintiffs probably will not succeed on the merits of showing that confusion of products and their sources likely will result due to Amoco's use of the "We go that extra mile" slogan.

Therefore, with regard to both relative markets, plaintiffs have not shown a likelihood of success on the merits. Plaintiffs' mark serves a descriptive function for the general public, yet has not obtained a secondary meaning in the minds of the general public that would identify the source of the product. Among independent tire dealers the phrase may be suggestive or may be descriptive with an acquired secondary meaning, yet no likelihood of confusion exists as a result of defendant's subsequent use of the same or similar mark. Thus, under federal trademark law, there is substantial doubt that plaintiffs can show a likelihood of success on the merits. *See Wendy's International, Inc. v. Big Bite, Inc.*, 576 F.Supp. 816, 821 (S.D.Ohio 1983).

### b. *Other Factors for the Preliminary Injunction*

Having decided that plaintiffs have not carried their burden in showing a likelihood of success on the merits, this Court finds it unnecessary to examine closely the remaining requirements for a preliminary injunction. Suffice it to say that no other factor (irreparable harm to the plaintiff, lack of hardship on defendant, or public interest concerns) weighs so much in favor of plaintiffs, if at all, so as to outweigh the effect of plaintiffs' inability to show a likelihood of success on the merits.

### IV. *Common Law Claim*

 Plaintiffs' common law claim presupposes the existence of a trademark valid under common law. Determining whether a mark is protectable under the common law is closely analogous to, if not identical with, the determination made under the federal trademark infringement laws. *Winners Corp.*, 563 F.Supp. at 718 n. 1; *see Jewel Companies*, 413 F.Supp. at 999. The core question is whether the two uses of the mark by plaintiffs and defendant create a likelihood of product confusion among the relevant group of consumers. *See Amstar Corp.*, 615 F.2d at 265. As indicated earlier, the Court finds no likelihood of confusion in this case. The independent tire dealer is not likely to think that Jerry Reed is "pushing" Amoco products in his advertisement package, nor is a member of the general public likely to confuse the source of the tires he carefully

purchases from Jerry Reed's licensee with that of the gas he casually buys from Amoco. Accordingly, plaintiffs' claim based on the common law is without merit and no injunction shall issue based upon that claim.

### V. *Tennessee Anti-Dilution Statute*

 Finally, plaintiffs request a preliminary injunction based on the alleged violation of T.C.A. § 47–25–433 (anti-dilution statute). Section 47–25–433 states: "Likelihood ... of dilution of the distinctive quality of ... a mark valid at common law ... shall be a ground for relief notwithstanding ... the absence of confusion as to the source of goods or services." Thus, in order to be protected under this statute, plaintiffs' mark must be "distinctive," or "unique." If plaintiffs' mark is not distinctive, there is nothing to be diluted by subsequent use of a similar mark. *See Amstar Corporation,* 615 F.2d at 265; *Holiday Inns, Inc. v. Holiday Out In America,* 481 F.2d 445, 450 (5th Cir.1973); *Norm Thompson Outfitters,* 448 F.2d at 1299. The Court finds that as to the phrase "Goin' the extra mile" plaintiffs are not likely to show the "distinctive quality" necessary to claim a cause of action under this statute. Therefore, plaintiffs' request for preliminary injunction based on this statute is denied.